Scudder, EJ., and Peradotto, J.
(dissenting). We respectfully dissent. In our view, the two Buffalo Police Department Housing Officers (officers) had the requisite reasonable suspicion to pursue defendant. We would therefore reverse the order, deny that part of the omnibus motion seeking suppression of physical evidence and defendant’s oral statements to the police, and remit the matter for further proceedings on the indictment.
After he was indicted on a charge of criminal possession of a weapon in the second degree (Penal Law § 265.03 [3]), defendant sought suppression of the handgun that had been seized from his jacket pocket on the ground that the officers lacked reasonable suspicion to pursue him. At the suppression hearing, the officers testified that they had received information from a person one of the officers had arrested earlier in the day concerning “possible weapons stashed behind a house” on Montana Avenue. The area around Montana Avenue was a high-crime area where there had been numerous arrests for narcotics and gun violence. Moreover, several people had been murdered in that area during the year in which this incident took place. Upon approaching the area, the officers observed defendant and a second man standing on a curb near the house in question. The man with defendant had recently been the victim of a shooting, and the officers stopped their patrol vehicle so the first officer could ask defendant’s companion if he had any new information concerning that shooting. At that point, defendant “glanced in [the officers’] direction, his eyes got very big, and then he looked down and walked away . . . very swiftly.” Defendant’s pace then escalated to a run. The second officer exited the patrol vehicle “just to see why [defendant] was going away so fast.” Defendant did not respond when asked for his name, but turned toward the second officer in an “aggressive fighter stance,” grabbed the right side of his jacket, and “vigorously” struggled to pull something out of it. The second officer yelled at defendant, “don’t do it,” because the officer “believed that [defendant] had a weapon and he was trying to pull it out of his jacket.” The second officer testified that his belief was based on having been “involved in numerous weapons arrest[s] and most likely every single time when they’re vigorously pulling something out of their coat [and] it doesn’t come out easily, it’s normally a weapon.” As defendant continued trying to pull something out of his coat, the second officer “pulled out [his] pistol, pointed it at [defendant], [and] told him again, don’t do *1296 it.” When defendant started running, the officers pursued him, caught him, and recovered a handgun from his coat pocket.
“[I]t is well settled that the police may pursue a fleeing defendant if they have a reasonable suspicion that [the] defendant has committed or is about to commit a crime . . . Flight alone is insufficient to justify pursuit because an individual has a right to be let alone and refuse to respond to police inquiry . . . However, a defendant’s flight in response to an approach by the police, combined with other specific circumstances indicating that the suspect may be engaged in criminal activity, may give rise to reasonable suspicion, the necessary predicate for police pursuit” (People v Riddick, 70 AD3d 1421, 1422 [2010], lv denied 14 NY3d 844 [2010] [internal quotation marks omitted]; see People v Holmes, 81 NY2d 1056, 1058 [1993]; People v Martinez, 80 NY2d 444, 446 [1992]). “Reasonable suspicion represents that ‘quantum of knowledge sufficient to induce an ordinarily prudent and cautious [person] under the circumstances to believe criminal activity is at hand’ ” (Martinez, 80 NY2d at 448).
While each individual act of defendant was insufficient on its own to provide the officers with the reasonable suspicion necessary to pursue and to detain him forcibly, we note that the Court of Appeals has recognized that it is the combination of flight and “other specific circumstances indicating that [a] suspect may be engaged in criminal activity” that may give rise to reasonable suspicion (People v Sierra, 83 NY2d 928, 929 [1994]; see People v Cady, 103 AD3d 1155, 1156 [2013]). “In determining whether a police officer has reasonable suspicion to justify his [or her] actions, ‘the emphasis should not be narrowly focused on . . . any . . . single factor, but [rather should be] on an evaluation of the totality of circumstances, which takes into account the realities of everyday life unfolding before a trained officer’ ” (People v Stephens, 47 AD3d 586, 589 [2008], lv denied 10 NY3d 940 [2008]).
We agree with the majority that “ ‘[t]he [suppression] court’s determination is entitled to great deference and will not be disturbed where it is supported by the record’ ” (People v Martinez, 105 AD3d 1458, 1459 [2013]; see People v Howington, 96 AD3d 1440, 1441 [2012]; People v Davis, 48 AD3d 1120, 1122 [2008], lv denied 10 NY3d 957 [2008]), but we find it disturbing that Supreme Court failed to consider the testimony of the second officer that, based on his prior experience, when someone is vigorously trying to pull an object out of a coat pocket and the object does not come out easily, that object is “normally a weapon.” It is well settled that the police “are allowed to *1297 ‘draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person’ ” (People v Hall, 10 NY3d 303, 311 [2008], cert denied 555 US 938 [2008]; see People v Brown, 151 AD2d 199, 203 [1989], lv denied 75 NY2d 768 [1989]). Although we have consistently held that the mere fact that a person reaches for his waistband, “absent any indication of a weapon such as the visible outline of a gun or the audible click of the magazine of a weapon, does not establish the requisite reasonable suspicion that defendant ha[s] committed or [is] about to commit a crime” (Riddick, 70 AD3d at 1422-1423; see Sierra, 83 NY2d at 929-930; Cady, 103 AD3d at 1156), we conclude that here, based on the experience of the second officer, there was an indication of a weapon, i.e., defendant took an “aggressive fighter stance” and was “vigorously” struggling to remove something from his coat pocket. Moreover, the facts in Riddick, a case relied on by the majority, are distinguishable. In that case, the officers were in an unmarked car and were on a routine patrol. There was no specific tip concerning weapons, and there was no evidence that the defendant knew that the officers were police officers when he walked away from their unmarked van. While the defendant in Riddick made a “gesture” toward his waistband, there was no testimony that the gesture was aggressive or vigorous or that such a gesture was indicative of a weapon (id. at 1422-1424). Although a coat pocket may not be as common a location for a weapon, we conclude that the second officer’s experience with weapons in coat pockets should have been considered by the court (see People v Benjamin, 51 NY2d 267, 271 [1980]; People v Bachiller, 93 AD3d 1196, 1198 [2012], lv dismissed 19 NY3d 861 [2012]). Indeed, in People v Pines (281 AD2d 311, 311-312 [2001], affd 99 NY2d 525 [2002]), the defendant, who was walking in the street with a companion, noticed the officers’ unmarked but recognizable vehicle, after which “his eyes bulged out” (id. at 311). As the officers approached, the “defendant ‘bunched up’ his bubble jacket on the right side, at the waist area, with his hand cupped underneath it’ ” (id. at 312). The officer in Pines stated that the defendant’s action “remind[ed] [him] of how he himself, when off-duty, sometimes adjusted his gun in a similar manner” (id.). The Appellate Court relied upon that testimony in holding that the pursuit was justified (id.). In both Pines and the instant case, the knowledgeable and experienced officer observed conduct by the defendant that was indicative of a weapon.
In addition, the officers in this case had received a tip from an arrestee, i.e., an identified citizen informant, that there were *1298 guns stashed in the area where they observed defendant and his companion. While we agree with the majority that there was no information establishing the reliability of the tip, such information may still be relied upon in a De Bour analysis. “Regardless of whether . . . the citizen-informant’s basis of knowledge was sufficiently established . . . , the combination of his report to the police and the officers’ observation^] . . . provided the requisite reasonable suspicion” (Matter of Shallany S., 11 AD3d 414, 414 [2004]; see People v Gresty, 237 AD2d 931, 932 [1997]).
We therefore conclude that, based on the combination of the tip, the high-crime location, the presence of a recent shooting victim, defendant’s initial behavior and his conduct indicative of a weapon, the officers had the requisite reasonable suspicion for the pursuit. Present — Scudder, EJ., Peradotto, Carni, Sconiers and Whalen, JJ.